UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PETER H. MYLON,

                              Plaintiff

                           v.                                  5:06-CV-268
                                                                     (FJS/GHL)

HACKENSACK UNIVERSITY MEDICAL
CENTER and WILLIAM D. SALERNO, M.D.,

                              Defendants.
_____

**APPEARANCES**                                       **OF COUNSEL**

**SONNEBORN, SPRING &**                  **IRWIN BIRNBAUM, ESQ.**
**O'SULLIVAN, P.C.**
316 South Clinton Street
Syracuse, New York 13202
Attorneys for Plaintiff

**BURKE, SCHOLAMIERO, MORTATI &**      **THOMAS J. MORTATI, ESQ.**
**HURD, LLP**
302 Washington Avenue Extension
P.O. Box 15085
Albany, New York 12212-5085
Attorneys for Defendant Hackensack
University Medical Center

**ASWAD & INGRAHAM**                    **JAMES FRANCIS MORAN, ESQ.**
46 Front Street
Binghamton, New York 13905
Attorneys for Defendant Salerno

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff filed his complaint in New York State Supreme Court on October 12, 2005,

asserting causes of action for negligence, medical and hospital malpractice, and failure to provide and credential competent medical staff arising from Defendants' treatment of his wife on June 2, 2000, and her death from lung cancer on February 25, 2004. Defendants subsequently removed the action to this Court.

Currently before the Court are Defendants' motions to dismiss Plaintiff's complaint based upon expiration of the statute of limitations and lack of personal jurisdiction. In response, Plaintiff moved for leave to file an amended complaint to include allegations of misrepresentation and concealment.

## II. BACKGROUND[1]

Plaintiff and his wife, Frances Mylon ("Decedent"), resided in Syracuse, New York. On June 2, 2000, Defendant Salerno examined Decedent at Defendant Hackensack University Medical Center ("HUMC") in New Jersey. On that date, Defendant Salerno performed a type of CAT scan known as an Electron Beam Computed Tomography ("EBCT") scan on Decedent and interpreted the results. However, he failed to notice an abnormality on Decedent's right lung, visible on the EBCT scan, which indicated a non-small cell carcinoma. Defendant Salerno did not provide further treatment to Plaintiff.

On July 16, 2003, Dr. Gary D. Leavitt, practicing in Syracuse, New York, performed a CAT scan on Decedent which revealed malignant lesions on her right lung. Plaintiff and

---

[1] Given the procedural posture of this case, the Court adopts Plaintiff's version of the facts.

Decedent subsequently discovered on October 15, 2003, that Defendants had not done a complete reading of the earlier EBCT scan. The lung cancer spread widely until Decedent's death on February 25, 2004, approximately two months before her sixty-sixth birthday.

### III. DISCUSSION

As stated, Defendants contend that New York's statutes of limitations bar Plaintiff's claims.

Pursuant to N.Y. C.P.L.R. § 202, the Court must apply the New York statutes of limitations to this action because it involves an alleged injury to a New York resident that occurred outside the state. *See* N.Y. C.P.L.R. § 202 (McKinney 2003). Actions for medical malpractice "must be commenced within two years and six months of the act, omission or failure complained of . . . ." N.Y. C.P.L.R. § 214-a (McKinney 2003). Related claims sounding in negligence but not involving the provision of medical care itself, including failure to hire competent medical personnel and failure to promulgate adequate rules and procedures, are governed by the three-year limitations period generally applicable to personal injury claims. *See* N.Y. C.P.L.R. § 214 (McKinney 2003); *Bleiler v. Bodnar*, 65 N.Y.2d 65, 66 (1985). Finally, the cause of action underlying a wrongful death suit must have been viable at the time of death. *See Phelps v. Greco*, 177 A.D.2d 559, 560 (2d Dep't 1991) (citing E.P.T.L. § 5-4.1) (other citations omitted).

In this case, Plaintiff asserts claims of negligence, medical and hospital malpractice, and failure to provide and credential competent medical staff arising from the medical care that

Defendants provided Decedent. A two-year and six-month statute of limitations applies to Plaintiff's malpractice claims. *See* N.Y. C.P.L.R. § 214-a (McKinney 2003). The three-year personal injury statute of limitations governs the negligence claim and the failure to provide and credential competent medical staff claim, which sounds in negligence. *See* N.Y. C.P.L.R. § 214 (McKinney 2003); *Bleiler*, 65 N.Y.2d at 66.

Defendants last treated Decedent on June 2, 2000. Therefore, absent any tolling of the statute of limitations, the period for commencing the malpractice claims expired on December 2, 2002, and for the negligence claims on June 2, 2003. Consequently, unless there was a tolling, these claims would have been untimely when Decedent died on February 23, 2004, as well as when Plaintiff filed his complaint on October 12, 2005.

In response to Defendants' motion, Plaintiff requests leave to file an amended complaint, in which he would assert that Defendants made false representations and intentionally concealed information. Specifically, Defendants allegedly represented to Plaintiff and Decedent on June 2, 2000, that they would do a complete examination of the EBCT scan and report the full results. In reporting the results of the EBCT scan, Defendants allegedly concealed the fact that they did not fully read the EBCT scan. Plaintiff asserts that these allegations entitle him to an equitable tolling of the statutes of limitations for both the medical malpractice and negligence claims.

A defendant may be estopped from asserting the statute of limitations as a defense when the plaintiff's failure to file a timely action is caused by the defendant's fraud, misrepresentation, or deception. *See Simcuski v. Saeli*, 44 N.Y.2d 442, 448-49 (1978) (citations omitted). However, a plaintiff cannot rely on the same act which forms the basis of his negligence or

medical malpractice claim to establish the defendant's fraudulent conduct. *See Rizk v. Cohen*, 73 N.Y.2d 98, 105-06 (1989) (citation omitted).  In other words, the defendant must, "acting with knowledge of *prior* malpractice, [make] *subsequent* misrepresentations in an attempt to conceal his earlier negligence." *Id.* (citation omitted); *see Putter v. North Shore Univ. Hosp.*, 7 N.Y.3d 548, 552 (2006) ("A plaintiff seeking to apply the doctrine of equitable estoppel must 'establish that subsequent and specific actions by defendants somehow kept [him or her] from timely bringing suit.'" (quotation omitted)).  Therefore, when a doctor fails to disclose the existence of a condition when reporting test results to the patient but has no further contact with the patient, there is no opportunity to make any misrepresentations and no corresponding equitable toll.  *See Kermen v. Brower*, 16 A.D.3d 156, 157 (1st Dep't 2005) ("[I]t is undisputed that plaintiff saw him only once, and had no further contact with him following the alleged misdiagnosis.  There can be no fraudulent concealment based on the same act that forms the basis of the negligence claim." (citations omitted)); *Phelps*, 177 A.D.2d at 560 (citations omitted).

In his proposed amended complaint, Plaintiff asserts that, on June 2, 2000, Defendants misrepresented their intentions to do a complete examination of the EBCT scan and concealed their incomplete reading of the scan when they reported the results.[2]  However, there is no

---

[2] Although the Court decides this motion to dismiss based exclusively on the pleadings pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, it notes that Defendants have submitted a "Patient Consent Form," which Decedent signed on June 2, 2000.  The signed form states that "I also understand that the Electron Beam (Ultrafast®) scan that I will have is only of the heart and not a complete CT scan of the chest." *See* Affidavit of James F. Moran, Esq., sworn to April 6, 2006, at Exhibit "B."  In addition, the EBCT scan report, which Plaintiff admits receiving in his proposed amended complaint, states that "[t]he Electron Beam (Ultrafast®) CT Scan of The Heart Center at Hackensack University Medical Center is intended as a coronary artery disease risk assessment facility only and is not considered a substitute for a careful

(continued...)

allegation that Defendants made a **subsequent** misrepresentation with knowledge of any alleged **prior** malpractice. *See Rizk*, 73 N.Y.2d at 105-06 (citation omitted). To the contrary, Defendants did not treat Decedent subsequent to June 2, 2000. Therefore, even in the proposed amended complaint, Plaintiff is relying on the same act which forms the basis of his malpractice claims, and this act cannot establish Defendants' allegedly fraudulent behavior. *See id.* at 105. Moreover, since Plaintiff does not allege that he or Decedent had any further contact with Defendants after the treatment on June 2, 2000, no subsequent misrepresentation could have occurred. *See Kermen*, 16 A.D.3d at 157 (citations omitted). Therefore, the Court finds that, even construing the proposed amended complaint in Plaintiff's favor, he can prove no set of facts entitling him to an equitable tolling of the applicable statutes of limitations.[3] Accordingly, Plaintiff's claims are time-barred.

### IV. CONCLUSION

Accordingly, after reviewing the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

---

[2](...continued)
examination by a physician." *See id.*

[3] In addition, although not *sine qua non* to this decision, courts have applied a second limitation on equitable tolls by requiring the plaintiff to diligently bring suit within a reasonable time after the concealment ends. *See Simcuski*, 44 N.Y.2d at 450 (citation omitted). For example, in *Kermen*, the court held the plaintiff's delay of two years and three months unreasonable as a matter of law. *See* 16 A.D.2d at 157-58 (citation omitted). In this case, Plaintiff delayed bringing suit for one year, eleven months, and twenty-eight days from the date he and Decedent allegedly discovered that Defendants had not fully read the EBCT scan. This length of time approaches the unreasonable delay in *Kermen*.

**ORDERS** that Defendants' motions to dismiss Plaintiff's claims are **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion to file an amended complaint is **DENIED AS FUTILE**; and the Court further

**ORDERS** that Plaintiff's claims are dismissed in their entirety because they are barred by the applicable statutes of limitations; and the Court further

**ORDERS** that the Clerk of the Court enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: March 9, 2007
Syracuse, New York

_/s/ Frederick J. Scullin_
Frederick J. Scullin, Jr.
Senior United States District Court Judge